Deaderick, J.,
delivered tbe opinion of tbe Court.
Tbe' plaintiff brought bis action in tbe circuit court of G-ibson county against tbe defendants, upon two notes, eacb for $502.51, due one day after date, and dated January 4, 1861, bearing- interest at tbe rate of ten per cent, per annum.
Verdict and judgment were rendered in favor of defendants, and tbe plaintiff appeals in error to tbis court.
*561 It appears from the record that Green Williams and defendant, Thomas J., were indebted by note under seal to Howard & Brothers in the sum of thirteen Hundred and thirty-eight dollars and ninety-two cents, due December 25, 1856, and that this note was assigned to plaintiff, July 25, 1856.
After this note became due, Howard & Brothers notified plaintiff to collect the same. The plaintiff, who is blind, sent his son with the note to Green Williams, one of the payors, to demand payment. Williams asked young Donaldson if his father would not let him keep the money, by giving his note with security, and paying ten per cent, interest. The son replied that he did not know. It was then agreed that Williams should meet the father at Trenton on the day agreed upon. Williams then took a memorandum of the Howard note, and upon the day agreed upon, the plaintiff, his son, and Williams met at Trenton. The proposition of Williams to give notes with security at ten per cent, was renewed to plaintiff, and accepted by him, the plaintiff saying, as stated by his son, that he, Williams, might keep the money and take up the note, and thereupon Williams produced three notes which he had brought with him, signed by himself, defendant Thos. J. Williams, and Cole, the intestate of Walker, as surety. These notes were accepted by plaintiff, and the note executed by G. & T. J. Williams to Howard & Brothers was delivered to Williams.
This transaction took place in March, 1857.
*562 "When these last named notes had been some time due, plaintiff and his son took the two larger notes to Williams, and again requested their payment. Williams being desirous of further indulgence, proposed to renew them, still paying ten per cent, interest, and plaintiff agreed to accept the notes of Gr. & T. J. Williams with Cole as surety, and the notes in controversy were then, January 4, 1861, executed and the old notes were lifted.
Plaintiff and his son, who were examined as witnesses on the trial below, say that the transaction was treated as a loan of money, and was so understood by all the parties; while the defendants, T. -J. Williams and Green Williams, who were also examined, testify that the only consideration of the first notes, was the Howard note, and ■ the sole consideration of the notes sued on, was notes given in renewal of the Howard note.
Exceptions ' have been taken to the charge of the court, by plaintiff, but we are of opinion that there is no error in the charge.
At the time of the execution of the notes sued on, the act passed February 21, 1860, entitled “an act to amend the usury laws of the State, and to establish a conventional rate of interest,” was, in force.
The 1st section provides that whenever any person contracts for the loan of money, it shall be lawful for the lender or his assignee, etc., to receive a rate of interest not to exceed ten' per cent., pro- *563 videcl such, agreement is expressed in .the face of the contract.
Sec. 2d, provides that any contract made for more than six per cent, for any other article than borrowed money, shall be usurious. Debts originally contracted for .loaned money, may be renewed at ten per cent, interest, but no other debt or liability not originating for money actually loaned, shall be thus renewed. And all efforts by direct or indirect means to take and receive a greater rate of interest than six per cent, per annum, for any debt, demand or liability, the origin of which is not for money actually loaned, shall be deemed unlawful, and operate as a release of the debtor from the entire amount of the debt: Acts of 1859-60, p. 81-2.
Before the passage of this act, a contract to pay more than six per cent, interest, upon a note, no matter what the consideration might be, was usurious, and if the usury appeared upon the face of the note, the party seeking to enforce it, either at law or in equity, would have been repelled from the court. And it is immaterial what the understanding of the parties to the transaction may have been, or to what devices they may have resorted to evade the penalties of the law against usury, if the contract is of a character forbidden by law, and its illegality is apparent from the facts presented in the record, it is the imperative duty of the courts so to declare.
It is argued by plaintiff’s counsel, that the con *564 tract in tbis case was treated and considered by tbe parties as a loan of money: yet it is manifest from tbe proof tbat it cannot be said to have been a loan of money.
In tbe most favorable aspect of tbe case as presented by plaintiff’s testimony and tbat of bis son, wben Green "Williams met plaintiff and bis son in Trenton “to fix tbe matter,” “Williams insisted upon being allowed to keep tbe money, and proposed to pay ten per cent., and plaintiff agreed to tbis proppsition,” and tbe new notes were delivered to plaintiff, and tbe Howard note surrendered to Williams.
Plaintiff did not loan any money to defendants; it was clearly tbe payment of a pre-existing debt by tbe execution of new notes, and these in turn paid by tbe execution of those now in suit. It can in no just sense be said tbat tbe notes sued on were executed for money “actually loaned.”
It follows tbat tbe contract is within tbe prohibition of tbe statute of 1859-60.
We are therefore constrained to affirm tbe judgment of tbe Circuit Court.